**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re NICOLE B. DICKERSON,

Case No. 6:18-cr-215-Orl-37DCI

Respondent.
_____/

## REPORT AND RECOMMENDATION OF THE GRIEVANCE COMMITTEE

Pursuant to U.S. District Judge Roy B. Dalton, Jr.'s Order dated November 16, 2018 (the "Referral Order"), on the matter of attorney Nicole B. Dickerson's ("Respondent") conduct, the Grievance Committee of the U.S. District Court for the Middle District of Florida, Orlando Division (the "Committee") reports and recommends as follows:

### BACKGROUND

#### I. Respondent

Respondent passed the bar in September 2015. She has appeared as counsel in five cases in the Middle District of Florida: Case Nos. 6:09-cr-103, 6:16-cr-256, 6:17-cr-301, 6:17-cv-37, and 6:18-cr-166. All but the last case are currently closed.

#### II. The *Rolle* Case

The conduct at issue first arose during trial before U.S. District Judge Gregory A. Presnell in the case of *United States v. Rolle*, Case No. 6:17-cr-301-Orl-31GJK ("*Rolle*"), in which Respondent appeared as lead counsel for the defendant.

On February 13, 2018, Respondent failed to appear to represent her client at a status conference before Judge Presnell. (*Rolle*, Doc. 16.)

On May 30, 2018, Respondent appeared twelve minutes late to the second day of trial. (*Id.*, Doc. 43.)

1

On August 14, 2018, Respondent failed to appear at another status conference. She called in twenty-one minutes later. (*Id.*, Doc. 91.)

On September 4, 2018, a court security officer ("CSO") noticed Respondent's paralegal, Ms. Edwards, using Respondent's cell phone during trial, in violation of the Court's Standing Order on the Possession and Use of Personal Electronic Devices in Federal Courthouses in the Middle District of Florida. (*See* 6:13-mc-94-Orl-22 ("Standing Order".) According to the CSO, Ms. Edwards was texting, and the light from the phone was disturbing the proceedings. (*See* Court Facility Incident Report dated Sept. 5, 2018) ("Report").) After the CSO confronted Ms. Edwards about using the cell phone in the courtroom during court proceedings, a dispute occurred between Ms. Edwards and the CSO, which, according to the Report, resulted in Ms. Edwards cursing at the CSO and then being escorted out of the courthouse. (*See id.*) Judge Presnell stated that Ms. Edwards is barred from the courthouse. (*Rolle*, Tr. dated Sept. 5, 2018.) Respondent asserted to the Committee that she suspended Ms. Edwards as a result of her conduct.

The following day, September 5, 2018, Respondent again arrived late to trial, this time resulting in the imposition of a $100.00 fine by Judge Presnell. Judge Presnell implicitly referred back to Respondent's prior failures and remarked that the fine was because he was "tired of [her] excuses." (*Rolle*, Tr. dated Sept. 5, 2018.) The Committee notes that Judge Presnell had previously made accommodations for Respondent to begin trial later in the day because Respondent had to drop off her daughters at school; however, despite this accommodation, Respondent was still late.

An order dated September 6, 2018, provided that the fine was due to be paid by September 14, 2018. (*Id.*, Doc. 110.)

### III. The Late Fine

Respondent failed to pay the fine imposed by Judge Presnell by the September 14, 2018 due date. In a letter to the Committee dated January 10, 2019 ("Letter"), Respondent asserted that she did not become aware of the fine's due date until September 19, 2018, when she was served with an Order to Show Cause by the U.S. Marshal containing the sanctions order. The Committee finds this assertion to be either not credible or inexcusable. Because Respondent was lead counsel on the *Rolle* case, she necessarily would have received electronic notice of the order filed on September 6, which set out the September 14 due date for the fine. She asserted in her Letter to the Committee that she did not click on the link to open that document during trial. The Committee finds that there was no excuse for Respondent not to timely pay the fine, of which she was notified on September 6.

Respondent asserts in her Letter that, after learning of the fine on September 19, she was unable to pay the fine on September 19 or 20. Then on September 21, Respondent was remanded to County Jail, where she served an eight-day sentence. This sentence stemmed from an October 2017 arrest, trial, and conviction on a charge of resisting an officer without violence. In March 2018, the court suspended her sentence on the condition that she complete 100 hours of community service by October 2018 and write a letter of apology to the officers. By July 2018, Respondent asserts that "it became evident that [she] could not complete the hours," and she was set to be remanded to jail on September 21, 2018. (It is unclear whether Respondent wrote the required letter of apology and why she could not complete the court-

3

ordered community service.) Respondent was released from jail on September 28. She asserted in her Letter that she paid the fine the next business day, on October 1. The Committee notes that no record of the Court receiving the payment is listed on the docket. Notably, during her status conference before Judge Dalton (discussed *infra*), Respondent did not advise the Court of this circumstance.

### IV.   The Contempt Case

As a result of Respondent's violation of the Court's Standing Order, Judge Dalton issued Respondent an Order to Show Cause why she should not be sanctioned. That Order set a hearing for September 18, 2018. Notice of the hearing was sent to Respondent by certified mail. (*See* No. 6:18-cr-215 ("*Dickerson*"), Doc. 1.) The Committee reviewed the mail tracking, which shows that Respondent's paralegal, Ms. Edwards, who was apparently suspended for the court incident the previous week, signed for the package on September 13, 2018. Respondent failed to appear at the hearing.

Respondent's Letter to the Committee asserted that she had failed to "properly train[] Ms. Edwards about mail procedures," and that the incident taught her "how important mail procedures are to a business." Given that this incident occurred in September 2018 and Respondent has owned and operated her own law firm since December 2015, the Committee finds this assertion troubling.

As a result of her failure to appear, failure to timely pay the fine, and violation of the Court's Standing Order, Judge Dalton opened the instant contempt matter and ordered Respondent to appear for a criminal contempt trial on October 3, 2018. After granting a continuance, the case was set for a status conference on November 16, 2018. (Doc. 11.) At that

conference, the U.S. Attorney's Office advised Judge Dalton that they did not believe they could proceed with the criminal contempt case because they did not believe that Respondent's actions were willful. Judge Dalton advised that, in the absence of a criminal contempt action, he intended to impose civil contempt sanctions. He stated:

> I find it, frankly, stupefying that a practicing lawyer who wants to appear in the United States District Court would be so cavalier, first of all, about receiving a fine from the presiding judge at all; secondly, not bothering to, as you say, click on the attachment; not bothering to open your mail; not bothering to pay the fine; attempting to pay the fine and being told it must be paid with cash and then saying . . . I guess, that you would just get around to it when you next had an opportunity.

(Tr. dated Nov. 16, 2018.) Judge Dalton accordingly dismissed the criminal contempt case and referred the instant matter to the Committee.

The question before the Committee are what sanctions, if any, should be imposed against Respondent, including whether Respondent should be suspended or removed from the Bar of the Middle District of Florida and whether monetary fines should be imposed.

## V.     Other Issues

The Committee also notes that in *United States v. Ivory*, Case No. 6:18-cr-166 ("*Ivory*"), subsequent to the referral of this matter to the Committee, Magistrate Judge Spaulding denied Respondent's motion for a writ of habeas corpus seeking to transport "a necessary witness for the Defense" to Florida to testify. (*Id.*, Doc. 47.) Judge Spaulding denied that motion because "Counsel for Defendant unduly delayed in requesting the writ," which would have delayed trial. (*Id.*, Doc. 51.) Multiple requests from Respondent for trial continuances were later denied. (*Id.*, Docs. 61, 66.) District Judge Byron, in denying a continuance, chastised Respondent's untimeliness and noted that "the Court does not agree

5

that delaying in the preparation of one's case in the event it may settle short of trial justifies a continuance." (*Id.*, Doc. 61, p. 3.) Judge Byron further noted that "defense counsel fails to justify the lengthy delay i[n] seeking the issuance of a writ to compel [the witness's] appearance at trial." (*Id.* at 2–3.)

The Committee also notes that in *Florida v. Teague*, Case No. 18-904, subsequent to the referral of this matter to the Committee, the Florida Fifth District Court of Appeal sanctioned Respondent in an Order dated December 10, 2018. That sanction was based on Respondent's failure to timely open orders in cases in which she was listed as counsel of record, her failure to be familiar with relevant rules, and her dilatory conduct which led to her clients' appeals being dismissed. She was also late to her sanctions hearing before that court. In other words: Respondent was sanctioned by the Fifth DCA for the same pattern of behavior she has exhibited in this Court.

With this background, the Committee now considers its recommendations.

## STANDARDS

Rule 4-1.3 of the Florida Rules of Professional Conduct requires that: "A lawyer shall act with reasonable diligence and promptness in representing a client." The comments to that Rule provide: "A lawyer's workload must be controlled so that each matter can be handled competently."

Rule 4-3.2 requires that: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." The comments provide: "Dilatory practices bring the administration of justice into disrepute."

The Court's Standing Order provides as follows: "Any attorney . . . may bring any personal electronic device beyond the courthouse's security checkpoint by presenting a valid Florida Bar identification card . . . ." (*Id.* ¶ 2.4.) However, the attorney "may not share [the device] with *anyone*," and "may not use it in a manner that disrupts any judicial proceeding." (*Id.* ¶ 2 (emphasis added).)

## RECOMMENDATION

The Committee's investigation included a review of the Referral Order; a review of the dockets of the *Rolle* case and the instant case, and transcripts from the same; the January 10, 2019 Letter from Respondent to the Committee with attachments; a letter from Assistant U.S. Attorney Kevin C. Frein to the Committee with attachments; the September 5, 2018 Report; and dockets of other cases involving Respondent.

Based on the Committee's investigation, the Committee concludes that serious sanctions are in order. As stated by Judge Dalton during the November 16, 2018 Status Conference, the ability to practice law in the Middle District of Florida is a privilege, not a right. A practitioner in this Court must show that she has an acceptable level of professionalism and competence to practice in Federal Court. The Committee's review of the record leads it to conclude that Respondent has not exhibited those attributes.

The facts that led Assistant U.S. Attorney Frein to advise the Court that the Government would not pursue criminal prosecution of Respondent for contempt are the same facts that support the Committee's recommendation for sanctions. As he put it, "the demand for Ms. Dickerson's services and her providing those services to her clients far outpaced any guidance, instruction, or overall organization within her law firm. It appeared as though there

was really no discerning guidance to the two employees that Ms. Dickerson had . . . ." Further, Respondent's Letter to the Committee essentially admitted the lack of training, organization, and professionalism in her office that led to this referral. She also admitted that she had not familiarized herself with the Court's rules, nor had she made certain that her staff was aware of those rules.

While these facts may have absolved Respondent of criminal responsibility for her actions at issue in the *Dickerson* case, they do not justify them. Respondent has exhibited a pattern of failing to appear, or appearing late, for court hearings, and of other dilatory conduct impacting her clients. This pattern is unacceptable regardless of whether those failures are the result of Respondent's intentional misconduct, negligence, or failure to properly hire and train firm employees.

Respondent's Letter advised the Committee of Respondent's background, including a difficult upbringing and the fact that she is a single parent of a child with special needs. The Committee has considered Respondent's Letter and taken it into account in making the recommendations set forth herein. The Committee commends Respondent for the dedication she exhibited in achieving her goal of becoming a lawyer and practicing law.

However, the Committee was concerned by other assertions in the Letter. Respondent states that she did not "intend to cause issues during court" when permitting her paralegal to use her cell phone, yet states, glibly, "Honestly, I would have appreciated even the slightest warning or admonition when the phone was causing a distraction." Respondent states that she disciplined her paralegal for cursing at the CSO, but that paralegal was back in her office a week later, and signed the certified mail receipt accepting the Court's Order to Show Cause,

which was apparently never opened by Respondent or her staff, resulting in Respondent failing to appear at the hearing. Respondent states that she has taken Judge Dalton's and Judge Presnell's admonitions to heart, yet within the next few months, she delayed on filing an important motion in another case, causing Judge Byron to chastise her, and was late to another hearing—her own sanctions hearing before the Fifth DCA. She states that she learns from her past mistakes so she will not commit them again; yet, after Judge Presnell chastised her on several occasions for being late and missing court entirely—even after he made accommodations for her—she was late yet again. She states that she believes the Court made an unfair "characterization" when Judge Dalton told her she did "not bother" to complete certain tasks, and that the Court's conclusion was "wrong" when it determined that she did not take the sanction seriously. Yet, it is indisputable that she did not click on an Order *sanctioning her* and did not open certified mail from the District Court. It is indisputable that she did not advise Judge Dalton of her County Court incarceration during the time before she paid the fine, which is troubling.

The Committee does not believe that Respondent has truly reckoned with how her behavior has formed a pattern of unprofessionalism that has not only delayed the Court system and the administration of justice, but has also impacted her clients, as well.

In sum, Respondent has violated the Florida Rules of Professional Conduct as well as multiple Orders of this Court. The Committee concludes that Respondent has not demonstrated the competence and professionalism necessary to practice in the Middle District of Florida.

## CONCLUSION

Accordingly, the Committee RECOMMENDS that the Court enter an Order as follows:

1. Referring Respondent to the Florida Bar;

2. Suspending Respondent from the Bar of the Middle District of Florida for a period of twelve (12) months, effective as of thirty (30) days from the date of the Order, which period is intended to permit Respondent to deal with her existing caseload and protect the interests of her existing clients during her suspension and lasting until the reinstatement conditions are met;

3. Prohibiting Respondent from taking on new cases in the Middle District of Florida, effective as of the date of the Order and lasting until she is reinstated to the Bar of the Middle District of Florida;

4. Setting the following reinstatement conditions, which must be met before Respondent is permitted to petition the Bar of the Middle District of Florida for reinstatement:

    a. Submit to the Florida Bar for a "Comprehensive Evaluation";

    b. Submit to the Florida Bar's Professionalism Workshop and Stress Management Workshop during the period of the suspension;

    c. Attend in person and complete all aspects of a Law Practice Management CLE;

    d. Attend in person and complete all aspects of the Practicing with Professionalism CLE;

e. Pay all outstanding monetary sanctions, fees, and costs levied against her, in any federal, state, or disciplinary actions, including those sanctions that may be ordered by this Court;

f. Complete all remediation ordered by the Florida Bar;

g. Complete all remediation ordered by any court, including reporting of any sanctions orders levied by any court to the appropriate parties;

h. Re-read the Florida Rules of Professional Conduct, the Local Rules of this Court, and the Court's Standing Order on the Possession and Use of Personal Electronic Devices in Federal Courthouses in the Middle District of Florida in full and certify in writing to this Court that she has done so; and

i. Reporting to the Court the completion of subparagraphs (a) through (i) of this paragraph on or before the date marking the end of the suspension period.

This report and recommendation will be filed in the docket of the above-captioned case and copies will be provided to Chief Judge Merryday, Judge Dalton, Judge Presnell, Judge Byron, Magistrate Judge Smith, Magistrate Judge Spaulding, and Magistrate Judge Irick.

The Committee requests that the Clerk serve a copy on the Florida Bar should the Chief Judge or Judge Dalton so order.

Respectfully submitted,

/s/ Lauren Millcarek
Lauren Millcarek
Florida Bar No. 100317
lauren.millcarek@hklaw.com
Chair
Grievance Committee
U.S. District Court
Middle District of Florida
Orlando Division

Dated: February 15, 2019.